UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH FREEMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:19-cv-04138-JMS-DLP |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**Order Denying Motion for Relief Pursuant to 28 U.S.C. § 2255,
Denying as Moot Motion to Expedite Ruling on 2255 Motion,
and Denying Certificate of Appealability**

For the reasons explained in this Order, Joseph Freeman's motion for relief pursuant to 28 U.S.C § 2255 must be **denied** and the action **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

### I. The § 2255 Motion

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United*

*States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Factual and Procedural Background

### A. Criminal Conduct[1]

Between 2015 and 2018, Mr. Freeman placed hidden cameras in bedrooms and bathrooms used by two minor females. With respect to Minor Vicitm 1, law enforcement officers found four videos which recorded her while she was nude and clearly depicted her vaginal and pubic area. Three of the videos were captured in the bedroom of Minor Victim 1; the other video was recorded in a bathroom.[2] Minor Victim 1 was 11 years old when two of the videos were recorded; she was 12 years old when the other two videos were recorded. Mr. Freeman can be seen positioning or manipulating the camera in each of the four videos. He used a black Motorola cell phone that was not manufactured in the state of Indiana to record each of the videos.

With respect to Minor Victim 2, Mr. Freeman hid a camera in her bedroom and positioned the camera to record the area of the bed. He also positioned a camera in the bathroom used by Minor Victim 2. He then told Minor Victim 2 to take a shower. Mr. Freeman recorded two videos of Minor Victim 2, but neither video captured her in a state of nudity or with her genital or pubic area displayed. Minor Victim 2 was 14 years old at the time Mr. Freeman made the videos. He used a Samsung Galaxy cell phone to create the videos, and that phone is not manufactured in the State of Indiana.

---

[1] The facts in this section are taken from the plea agreement. *United States v. Freeman*, 1:18-cr-00081-JMS-DML, dkt. 28. Mr. Freeman challenges the validity of his plea agreement, but he does not challenge these facts.

[2] Although descriptions of all four videos were included in the factual basis of the plea, the count to which Mr. Freeman pleaded guilty involved the first video. Minor Victim 1 was 11 years old at the time of the video, and it was recorded in her bedroom.

**B. Criminal Proceeding**

In March 2018, Mr. Freeman was charged with five counts of actual or attempted sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e). *United States v. Freeman*, 1:18-cr-00081-JMS-DML ("Crim. Dkt."), dkt. 11. Four months later, Mr. Freeman executed a petition to enter plea of guilty and plea agreement. Crim. Dkt. 28.

Under the terms of the plea agreement, Mr. Freeman agreed to plead guilty to two counts of actual or attempted sexual exploitation of a child in exchange for dismissal of the three remaining counts. *Id.* at ¶¶ 1-2. The plea agreement noted "that the determination of [Mr. Freeman's] sentence is within the discretion of the Court," and it recognized that the parties did not agree to a specific sentence. *Id.* at ¶¶ 6, 10. The government agreed to recommend a sentence of 300 months' imprisonment, and Mr. Freeman acknowledged that he could not receive a sentence of less than 180 months' imprisonment. *Id.* at ¶ 10. The parties also agreed that the Court would determine the Sentencing Guidelines range, and they "reserve[d] the right to present evidence and argument concerning the appropriate advisory Sentencing Guidelines range." *Id.* at ¶ 24.

As part of the plea agreement, Mr. Freeman waived his right to appeal his conviction and sentence. *Id.* at ¶ 27. He also waived his right to contest his conviction or sentence in post-conviction proceedings, except for claims of ineffective assistance of counsel. *Id.* at ¶ 28. He acknowledged the following as part of his plea agreement: (1) he discussed the indictment with his attorney; (2) his attorney counseled him as to the accusation and his possible defenses; (3) he discussed the plea agreement with his attorney and understood all its terms; (4) no other promises were made except those contained in the plea agreement; (5) he was "fully satisfied" with his

attorney's representation; (6) he made no claim of innocence and freely and voluntarily pleaded guilty; and (7) he pleaded guilty because he is guilty. *Id.* at ¶ 33.

A presentence investigation report ("PSR") was prepared prior to Mr. Freeman's change of plea and sentencing hearing. Crim. Dkt. 33. It calculated a total offense level of 42 and a criminal history category of I, resulting in a recommended sentencing range of 360 months' to life imprisonment. *Id.* at ¶ 82. Mr. Freeman filed no objections to the PSR.

The Court conducted a combined change of plea and sentencing hearing in October 2018. Crim. Dkt. 41 (minute entry); Crim. Dkt. 47 (transcript). Mr. Freeman affirmed that he had discussed the indictment and case with counsel, that he had read and discussed the plea agreement with counsel, and that he understood the terms of the plea agreement. Crim. Dkt. 47 at 6-7; *see also id.* at 24. The Court reviewed the mandatory minimum and maximum sentences applicable and explained that it was within the Court's discretion to determine a fair sentence. *Id.* at 8, 10. Mr. Freeman indicated that he understood those provisions. *Id.* When the Court reviewed the appeal and post-conviction waiver provisions of the plea agreement, Mr. Freeman stated that he understood and that he waived those rights of his own free will and after conferring with his attorney. *Id.* at 20-23. The Court concluded that Mr. Freeman's guilty plea was knowing and voluntary and supported by an adequate factual basis. *Id.* at 24. It therefore accepted the plea and proceeded to the sentencing portion of the hearing. *Id.*

The Court began the sentencing portion of the hearing by reviewing the presentence investigation report and verifying that Mr. Freeman had no objections to it. *Id.* at 25-26. It reviewed the Sentencing Guidelines calculation, including several increases based on the facts of Mr. Freeman's offenses, and affirmed that there were no objections to the calculation. *Id.* at 27-28. The Court then provided Mr. Freeman an opportunity to speak and heard argument from both

Mr. Freeman's counsel and the government concerning an appropriate sentence. *Id.* at 29-51. Considering the factors listed in 18 U.S.C. § 3553(a), the Court imposed an aggregate sentence of 192 months' imprisonment and 10 years' supervised release. *Id.* at 55-58; *see also* Crim. Dkt. 42 (judgment).

Mr. Freeman did not appeal his conviction or sentence, but he filed this § 2255 motion in October 2019. Crim. Dkt. 46.

### III. Discussion

Mr. Freeman raises several issues in his § 2255 motion and related filings. *See* dkts. 1, 13, 14, 24. Generally, he alleges that he received ineffective assistance of counsel, that he was subject to prosecutorial and judicial misconduct, that counsel had a conflict of interest, and that this Court lacked jurisdiction over his criminal proceedings. The Court will address the ineffective assistance of counsel claims on the merits, but it finds that Mr. Freeman waived his right to assert the additional claims in a § 2255 motion.

**A. Ineffective Assistance of Counsel**

Mr. Freeman highlights several alleged errors by trial counsel that he believes amount to constitutionally ineffective assistance. A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).

5

The Court must then consider whether in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up). Because Mr. Freeman executed a plea agreement, to show prejudice he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Brock-Miller v. United States*, 887 F.3d 298, 311 (7th Cir. 2018). Mr. Freeman alleges that he would not have pleaded guilty absent the alleged errors, *see, e.g.*, dkt. 24 at 42, so the Court will focus its analysis on whether Mr. Freeman has met his burden with respect to the first prong: that counsel's performance fell below objective standards for reasonably effective representation.

### 1. Advisement Concerning the Plea Agreement and PSR

One of Mr. Freeman's allegations of error is that counsel did not adequately advise him concerning the plea agreement and the PSR. *See* dkt. 13 at 2, 16-20. With respect to the plea agreement, he alleges that counsel delayed presenting and explaining it, that counsel coerced him into signing it, and that counsel told him to sign and return it quickly. *Id.* at 17. As to the PSR, Mr. Freeman faults counsel for failing to provide a copy of it to Mr. Freeman prior to objections being due and for failing to provide it at least 35 days prior to the sentencing hearing. *Id.* at 17, 19.

Mr. Freeman's current allegations contradict his testimony during the plea colloquy. A petitioner "cannot obtain relief by the expedient of contradicting statements freely made under oath unless there is a compelling reason for the disparity. *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007), *judgment vacated and remanded on other grounds*, 554 U.S. 911 (2008). A defendant's sworn testimony during a plea colloquy is "presumed true, and the defendant bears a

heavy burden to overcome this presumption." *United States v. Smith*, 989 F.3d 575, 582 (7th Cir. 2021).

Mr. Freeman has not satisfied the heavy burden of overcoming the presumption that his statements at the plea colloquy were true. In response to the Court's inquiry, Mr. Freeman verified that he had read and discussed the plea agreement and PSR with counsel, that he understood the terms of the plea agreement and had no questions concerning it, and that the PSR was accurate. Crim. Dkt. 47 at 6-7, 22-26. He expressed no confusion or hesitation when the Court reviewed the plea agreement and the PSR, and he has offered no explanation for the disparity between his testimony at the plea colloquy and his current allegations.[3] Mr. Freeman is not entitled to habeas relief on this basis.

### 2. Object to Sentencing Enhancements

Mr. Freeman also challenges counsel's failure to object to the enhancements applied when determining his total offense level under the Sentencing Guidelines. Dkt. 13 at 3, 6. He claims that these enhancements were not part of the plea agreement and thus could not be considered. *Id.* at 6. He also asserts that counsel should have argued that the government did not abide by the plea agreement concerning the enhancements. *Id.* at 6-7.

It was not objectively unreasonable for counsel to elect not to make these objections. Contrary to Mr. Freeman's argument, the plea agreement expressly stated that the parties had not agreed upon a specific sentence and that both Mr. Freeman and the government reserved "the right to present evidence and argument concerning the appropriate advisory Sentencing Guideline range" for the offenses. Crim. Dkt. 28 at ¶¶ 10, 24. The Court reviewed this provision with Mr. Freeman, and he indicated that he understood it. Crim. Dkt. 47 at 20. An argument that any

---

[3] In fact, in his final reply brief, Mr. Freeman acknowledges that "he discussed his charges, the presumed prevailing statute, the plea agreement, and a sentence of (15) to (30) years" with counsel. Dkt. 24 at 24.

enhancements should not apply because there were not in the plea agreement would have been frivolous, and counsel is not deficient for failing to raise frivolous arguments. *See United States v. Carter*, 355 F.3d 920, 924 (7th Cir. 2004) ("First, counsel cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues."). Habeas relief is not warranted on this basis.

### 3. Challenge Constitutionality of § 2251

Mr. Freeman was charged with five count of actual or attempted sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e). He argues that counsel should have challenged the constitutionality of § 2251 on grounds that Congress did not act within the bounds of its authority when it enacted § 2251. Dkt. 13 at 3, 13-16; *see also* dkt. 24 at 14-29. He contends that conduct criminalized by § 2251 does not sufficiently impact interstate channels of commerce to trigger federal jurisdiction. Dkt. 24 at 14-29.

Counsel did not render ineffective assistance by failing to present such an argument. Mr. Freeman was charged with, and pleaded guilty to, producing a visual depiction of a minor engaged in sexually explicit conduct "using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means." *See* Crim. Dkt. 11 at 2; 18 U.S.C. § 2251(a). As applied to Mr. Freeman, § 2251(a) encompasses conduct that uses the channels of interstate commerce and thus is an appropriate exercise of Congress' power under the Commerce Clause. *See United States v. Schaffner*, 258 F.3d 675, 679-680 (7th Cir. 2001). A challenge to the validity of § 2251(a) would have been frivolous, and counsel did not perform deficiently by failing to raise it.

#### 4. Challenge Lack of Transportation of Image

The Court next analyzes Mr. Freeman's argument that counsel should have argued that Mr. Freeman did not transport any of the videos he took of Minor Victim 1 and Minor Victim 2. Dkt. 13 at 4-6. This argument fails because it misreads § 2251(a).

Section 2251(a) does not require that a defendant transmit or transport the visual depiction of a minor engaging in sexually explicit conduct. Rather, that is one way in which a defendant may violate § 2251(a). *See* 18 U.S.C. § 2251(a). Section 2251(a) provides three different manners in which a defendant may act, and Mr. Freeman admitted that he produced the videos using materials that traveled in interstate or foreign commerce. *See* Crim. Dkt. 28 at ¶ 28. Any argument that Mr. Freeman's conduct did not fall under § 2251(a) because he did not transport or transmit the images would have been frivolous and therefore counsel did not act unreasonably in failing to present such argument.

#### 5. Sexually Explicit Conduct

Mr. Freeman argues that counsel's performance was deficient because counsel failed to view the videos of Minor Victim 1 and Minor Victim 2 and thus did not advise Mr. Freeman that the videos did not depict a minor engaged in sexually explicit conduct. Dkt. 13 at 6, 20-21; *see also* dkt. 24 at 29-30.  The Court will assume without finding that this allegation is true.

Section 2251(a) encompasses visual depictions of minors engaged in "sexually explicit conduct." 18 U.S.C. § 2251(a). "Sexually explicit conduct" is defined to include actual or simulated "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). "Generally speaking, . . . a lascivious display is one that calls attention to the genitals or pubic area for the purpose of eliciting a sexual response in the viewer." *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011). "[M]ore than nudity is required to render [a video]

lascivious; rather, the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *Id.* (cleaned up).

Court generally consider the following non-exhaustive factors when applying the definition of "lascivious exhibition of the genitals or pubic area": (1) whether the focus of the image is the minor's genitalia or pubic area; (2) whether the visual setting or pose is sexually suggestive; (3) whether the minor's pose is unnatural or whether the minor is dressed in inappropriate attire; (4) whether the minor is fully or partially nude; (5) whether sexual coyness or willingness to engage in sexual activity is suggested; and (6) whether the depiction is intended or designed to elicit a sexual response in the viewer. *Id.*

Although Mr. Freeman challenges counsel's failure to view the videos to ensure that they met the definition of "sexually explicit conduct," viewing the videos was not necessary given the facts admitted by Mr. Freeman. He admitted to: (1) secretly placing cameras in the bedrooms and bathrooms used by minors; (2) recording or attempting to record minors in states of full nudity; (3) manipulating the camera to focus on the shower area in the bathroom and the bed area in the bedroom; (4) instructing Minor Victim 2 to take a shower after placing cameras in her bedroom and the bathroom; and (5) engaging in a pattern of surreptitiously recording minors. Crim. Dkt. 28 at ¶ 28.

Considering these admissions,[4] it was reasonable for counsel to conclude that Mr. Freeman recorded or attempted to record minors engaged in sexually explicit conduct. *See United States v. Skaggs*, 412 F. Supp.3d 958, 971 (S.D. Ind. 2019) (concluding videos depicted sexually explicit conduct where the victim was seen entering and exiting the shower, the victim was partially or entirely nude, the victim's genital and pubic areas were the focus, the shower setting was "sexually

---

[4] It is worth noting that Mr. Freeman does not present a single challenge to the factual basis of his plea agreement.

suggestive," and the defendant admitted to targeting 14-year-old victims). Thus, there was no need to view the videos, and it would have been frivolous to argue that the videos were not taken in an attempt to depict minors engaged in sexually explicit conduct. Mr. Freeman is not entitled to habeas relief on this basis.

### B. Waived Claims

In addition to his claims of ineffective assistance of counsel, Mr. Freeman asserts claims of prosecutorial misconduct, judicial misconduct, conflict of interest, and lack of jurisdiction.

"A defendant may waive his right to challenge his sentence on collateral review through a plea agreement, assuming such waiver is knowing and voluntary." *Plunkett v. Sproul*, 16 F.4th 248, 253 (7th Cir. Oct. 20, 2021). Courts generally enforce a waiver "if its terms are express and unambiguous and the record shows it was knowing and voluntary." *United States v. Bridgewater*, 995 F.3d 591, 595 (7th Cir. 2021); *see also Plunkett*, 16 F.4th at 254-56 (dismissing petition for a writ of habeas corpus under 28 U.S.C. § 2241, concluding that the petitioner's claim fell within the scope of the waiver in his plea agreement and that his plea was knowing and voluntary). Accordingly, the Court turns to whether Mr. Freeman is barred by his plea waiver from raising these additional claims.

### 1. Scope of Plea Waiver

Courts interpret plea agreements "according to ordinary principles of contract law." *United States v. Galloway*, 917 F.3d 604, 606-07 (7th Cir. 2019). "Unambiguous terms must be given their plain meaning" and ambiguous terms are construed in the light most favorable to the defendant. *Id.* at 607.

As part of his plea agreement, Mr. Freeman agreed "not to contest, or seek to modify, [his] conviction or sentence or the manner in which either was determined in . . . an action brought

under 18 U.S.C. § 3582 or 28 U.S.C. § 2255." Crim. Dkt. 28 at ¶ 28. The only exception to this waiver was any claim "that [he] received ineffective assistance of counsel." *Id.* This waiver is unambiguous and precludes a § 2255 motion on any claim other than ineffective assistance of counsel.

Mr. Freeman raises three claims that do not relate to the assistance of counsel: prosecutorial misconduct, judicial misconduct, conflict of interest, and lack of jurisdiction. *See, e.g.*, dkt. 1 at 5, 8-9. Because these claims do not relate to ineffective assistance of counsel, they fall within the scope of the plea waiver.

### 2. Knowing and Voluntary

Even though these claims fall within the scope of the plea waiver, Mr. Freeman "may nonetheless escape application of this waiver if it was not knowing and voluntary." *Plunkett*, 16 F.4th at 255. To determine whether a waiver was knowing and voluntary, the Court "must examine the language of the plea agreement itself and also look to the plea colloquy between the defendant and the judge." *Id.* A written waiver signed by the defendant will typically be voluntary and knowing, and thus enforceable through dismissal. *Id.*; *see also Galloway*, 917 F.3d at 606.

A review of the plea agreement and plea colloquy confirms that Mr. Freeman's waiver was knowing and voluntary. First, the plea agreement contains a written, unambiguous waiver of Mr. Freeman's right to contest his conviction or sentence "in any later legal proceeding, including but not limited to, an action brought under . . . 28 U.S.C. § 2255." Crim. Dkt. 28 at ¶ 28. Mr. Freeman signed the plea agreement containing this written waiver. *Id.* at p. 22. Second, Mr. Freeman expressed no misunderstanding or hesitation concerning this waiver during the plea colloquy. When reviewing the rights Mr. Freeman waived by pleading guilty, the Court explained that he was "giving up [his] right to file any later legal challenges to [his] conviction or sentence with two

exceptions." Crim. Dkt. 47 at 21. Mr. Freeman stated that he understood that waiver, as well as the exceptions to that waiver. *Id.* The Court also asked Mr. Freeman whether he agreed to give up those rights "of [his] own free will," and Mr. Freeman indicated that he waived those rights of his own free will and after consulting with his attorney. *Id.* at 23-24. At no time during this exchange did Mr. Freeman express confusion about the waiver or otherwise indicate that it was involuntary. On this record, there is no indication that Mr. Freeman's waiver was anything other than knowing and voluntary, and thus it is enforceable. *Plunkett*, 16 F.4th at 256 (finding waiver knowing and voluntary because defendant not only signed a written waiver, but "also attested in his plea colloquy . . . to the fact that he made the waiver knowingly and voluntarily").

Under these circumstances, Mr. Freeman's claims of prosecutorial misconduct, judicial misconduct, conflict of interest, and lack of jurisdiction are barred by the plea waiver and dismissed with prejudice.

### IV. Motion to Expedite Ruling

Recently, Mr. Freeman filed a motion asking the Court to "consider the expediting of a decision." Dkt. 28. Because the Court has now addressed the merits of Mr. Freeman's § 2255 motion, his motion to expedite, dkt. [28], is **denied as moot**.

### V. Conclusion

For the reasons explained in this Order, Mr. Freeman is not entitled to relief on his § 2255 motion. He did not receive ineffective assistance of counsel and his additional claims are barred by the plea waiver. Accordingly, his motion for relief pursuant to § 2255 is **denied** and this action is **dismissed with prejudice**. Judgment consistent with this Order shall now issue, and the clerk **shall docket a copy of this Order in 1:18-cr-00081-JMS-DML-1.** The motion to vacate, Crim. Dkt. [46], shall also be **terminated** in the underlying criminal action.

## VI. Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Freeman has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Date: 5/2/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JOSEPH FREEMAN
16259-028
ELKTON - FCI
ELKTON FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 10
LISBON, OH 44432

Kristina M. Korobov
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kristina.korobov@usdoj.gov